REGUALOS v COMMUNITY HOSPITAL

Docket No. 74257. Submitted June 11, 1984, at Grand Rapids.—Decided February 4, 1985. Leave to appeal applied for.

Felipe H. Regualos, Jr., M.D., a physician specializing in internal medicine on the staff of Community Hospital in Battle Creek, requested the privilege of interpreting pulmonary function tests on his patients at the hospital. The hospital's executive committee granted the request with the provision that a preceptor monitor his performance and report to the committee. After reviewing 79 tests performed by Regualos, the preceptor informed the committee that Regualos was incompetent to properly interpret the tests. The executive committee thereupon terminated Regualos's pulmonary function privileges. The termination was approved by the hospital's board of trustees. Regualos sought and was granted a hearing on the termination of his pulmonary function privileges. The hearing board retained two outside physicians to review the preceptor's conclusions and the outside physicians agreed that in many instances Regualos had not interpreted the pulmonary function tests correctly. The executive committee then decided that Regualos could reapply for privileges when he demonstrated further education in the area and completed another review period under the observation of a preceptor. Regualos appealed to the appellate review committee of the hospital, which decided that the recommendations and decision made against Regualos were

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Hospitals and Asylums § 8 et seq.
Hospital's liability for negligence in failing to review or supervise treatment given by doctor, or to require consultation. 12 ALR4th 57.
Exclusion of or discrimination against physician or surgeon by hospital. 37 ALR3d 645.

[2] 50 Am Jur 2d, Libel and Slander § 192 et seq.

[3] 16A Am Jur 2d, Constitutional Law § 824.
Supreme Court's view as to applicability, to conduct of private person or entity, of equal protection and due process clauses of the Fourteenth Amendment. 42 L Ed 2d 922.

[4] 73 Am Jur 2d, Summary Judgment §§ 1, 21.

[5] 73 Am Jur 2d, Summary Judgment § 18.

justified, and not arbitrary or capricious, and that *Regualos* had been provided due process. The executive committee of the board of trustees unanimously approved the decision of the appellate committee. Regualos filed suit against Community Hospital and others in Calhoun Circuit Court alleging that he was denied the due process he was entitled to under the bylaws, rules, and regulations of the hospital; that as a result of the defendants' breach of the terms and conditions of the bylaws, rules, and regulations, he sustained substantial damage to his professional reputation and substantial economic loss; that defendants jointly and severally with malice published and disseminated a statement to the effect that plaintiff was incompetent, a statement defendants knew or should have known was false, and that plaintiff was damaged thereby. The court, Paul Nicolich, J., granted defendants' motion for summary judgment, finding that plaintiff failed to state a claim, that there was no genuine issue as to any material fact, and that defendants were entitled to judgment as a matter of law. Plaintiff appealed. *Held:*

1. The trial court correctly ruled that the decision by the governing body of defendant hospital to terminate plaintiff's privilege to interpret pulmonary function tests was not subject to judicial review.

2. The trial court correctly ruled that defendants are entitled to qualified immunity for any statements made about plaintiff in the course of a medical staff peer review process. Plaintiff failed to show any actual malice on the part of defendants.

3. There is ample record support for the trial court's finding that the defendant hospital had given plaintiff a fair hearing of his claims.

4. Plaintiff's claim that he was erroneously held to a higher expert standard of care and that his competence should have been tested against that of a general practitioner in the community will not be reviewed. Since this is not a negligence action for malpractice, the appropriate review standard is for the hospital to determine.

5. The trial court did not err in denying plaintiff's motion for further discovery made after the court granted defendants' motion for summary judgment. Further discovery would not have revealed any useful evidence.

6. Plaintiff's contention that the trial court erred in considering defendants' affidavits submitted in support of their summary judgment motion is without merit.

7. Plaintiff's contention that he has had the privilege to interpret pulmonary function tests at another hospital under

the direction of the same doctor who declared him incompetent to perform the tests at Community Hospital cannot be considered since that fact, if true, is not in the record.

8. Plaintiff's other claims are without merit.

Affirmed.

1. HOSPITALS — PHYSICIANS AND SURGEONS — PRIVATE HOSPITALS.

The decisions of the governing body of a private hospital in terminating a staff physician's temporary privilege of interpreting pulmonary function tests on the ground that the physician was incompetent to interpret the tests is not subject to judicial review.

2. HOSPITALS — PHYSICIANS AND SURGEONS — MEDICAL STAFF PEER REVIEW — IMMUNITY.

Persons engaged in a medical staff peer review process are entitled to statutory qualified immunity for acts or communications made within the scope of the review process or for the release or publication of the reports, findings or conclusions of the reviewing body so long as there is no malice involved in their actions (MCL 331.531; MSA 14.57[21]).

3. CONSTITUTIONAL LAW — FOURTEENTH AMENDMENT — DUE PROCESS — PRIVATE PERSONS AND ENTITIES.

The Fourteenth Amendment to the United States Constitution, which prohibits the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities (US Const, Am XIV).

4. JUDGMENTS — SUMMARY JUDGMENT — DISCOVERY.

A grant of summary judgment is premature if made before discovery on the disputed issue is complete; however, there must be a disputed issue before the court; if the party opposing a motion for summary judgment cannot present competent evidence of a disputed fact because his or her discovery is incomplete, the party must at least assert that such a dispute does indeed exist and support the allegation by some independent evidence, even if hearsay.

5. JUDGMENTS — SUMMARY JUDGMENT — AFFIDAVITS.

Affidavits used in a summary judgment proceeding must be made on personal knowledge of the affiant and must set forth the facts which would be admissible as evidence to establish or deny the grounds stated in the pleading or motion.

Felipe H. Regualos, Jr., *in propria persona.*

*Warner, Norcross & Judd* (by *Thomas J. Mc-Namara),* for defendants.

Before: R. B. Burns, P.J., and D. E. Holbrook, Jr., and G. R. Deneweth,* JJ.

R. B. Burns, P.J. Plaintiff appeals from the trial court's grant of summary judgment in defendants' favor. We affirm.

Plaintiff is a physician specializing in internal medicine and is on the staff of defendant hospital. In December, 1978, plaintiff requested the privilege of interpreting pulmonary function tests on his patients at the hospital. The hospital's executive committee granted his request with the provision that a preceptor monitor plaintiff's performance and report to the committee. Defendant Dr. Chihsing Chen was appointed preceptor.

Chen reviewed 79 pulmonary function tests performed by plaintiff and subsequently sent a letter to the committee opining that plaintiff was incompetent to properly interpret the tests. In the letter, Chen stated that plaintiff misinterpreted 24 of the 79 tests which he had analyzed.

On June 17, 1980, the executive committee considered Chen's letter and terminated plaintiff's pulmonary function privileges. The hospital's board of trustees approved this action and, pursuant to hospital procedures, a summary of the minutes of the June 17, 1980, meeting of the executive committee was distributed to hospital personnel. The minutes stated that a physician's privileges to interpret pulmonary function tests had been terminated but did not mention plaintiff's name.

Plaintiff was notified of the termination of his privileges and on July 3, 1980, he sent a letter to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the hospital administrator requesting a hearing as provided by the hospital bylaws. Although the request was not timely, plaintiff was notified on August 6, 1980, that he would be granted a hearing.

At the hearing held August 25, 1980, plaintiff questioned the denial and delay of his request for a review of Dr. Chen's evaluation of his performance. The three-member hearing board decided to retain two outside physicians to review Chen's conclusions.

Subsequently, the reports of the reviewing physicians revealed that in many instances plaintiff did not interpret the pulmonary function tests correctly. Plaintiff did not attend the committee's review of these outside evaluations.

On October 21, 1980, the reports of the committee concerning termination of plaintiff's pulmonary-test interpretation privileges were read at a meeting of the executive committee. After discussion, the committee decided that plaintiff could reapply for privileges when he demonstrated further education in the area and completed another review period under the observation of a preceptor.

Pursuant to the hospital bylaws, plaintiff then appealed to the appellate review committee of the hospital. At the November 12, 1980, hearing, the committee discussed each of the 32 points raised by plaintiff and reviewed those relevant to the proceedings. Plaintiff was then excused. The committee doctors then reviewed the pulmonary function reports presented by Dr. Chen and the outside physicians, Drs. Dircks and Grambau. The portion of the discussion in which the committee reviewed the pulmonary function tests was not transcribed due to a tape recorder malfunction. The appellate committee decided that the recommendations and

decision made against plaintiff were justified, and not arbitrary or capricious, and that plaintiff had been provided due process. Plaintiff appealed the decision of the appellate review committee to the executive committee of the board of trustees. The trustees unanimously approved the previous decisions. Plaintiff then filed the instant action on May 27, 1981.

The primary thrust of defendants' argument in support of their summary judgment motion was that there was no evidence in the record that defendants had acted with malice. Therefore, defendants argued, under MCL 331.531; MSA 14.57(21), they were immune from liability as participants in a medical peer review process. Defendants attached affidavits to their motion in which they stated that they relied in good faith upon the findings of Drs. Chen, Dircks and Grambau.

The trial court agreed that there was no evidence that defendants had acted with malice against plaintiff. The court also found that plaintiff had been afforded his right to fundamental fairness as provided by the hospital bylaws, rules and regulations. Accordingly, the court granted defendants' motion for summary judgment in a written opinion.

Plaintiff then requested that he be allowed to conduct further discovery. After a hearing, the trial court denied plaintiff's request for further discovery and entered its order of summary judgment.

I

Plaintiff first contends that the trial court erred in ruling that the decision by the governing body of defendant hospital to terminate plaintiff's privilege to interpret pulmonary function tests was not

subject to judicial review. After reviewing the pleadings, affidavits and the applicable hospital bylaws, the trial court reached its conclusion based on this Court's decision in *Hoffman v Garden City Hospital-Osteopathic,* 115 Mich App 773; 321 NW2d 810 (1982). In *Hoffman,* the defendant, Garden City Hospital, had received Hill-Burton funds from the federal government and federal public works accelerated program funds. The hospital was a nonprofit, tax-exempt charitable institution with Medicare and Medicaid patients making up approximately one-third of the total patient population. The *Hoffman* plaintiffs brought suit after they had been denied hospital staff privileges, claiming that the hospital's decision was arbitrary, capricious and unreasonable and that it was the fulfillment of a conspiracy to protect the financial interests of the individual staff members. This Court found that Garden City Hospital was a private hospital and held that the decisions of governing bodies of private hospitals are not subject to judicial review. 115 Mich App 778-779.

Plaintiff here does not assert that defendant hospital is a public institution but argues that it is "quasi-public" and, therefore, it should be subject to more stringent due process standards than a private hospital. Plaintiff urges us to find that defendant has a quasi-public status on facts that are indistinguishable from the position of the defendant in *Hoffman.* Receipt of federal monies and acceptance of Medicare and Medicaid patients does not transform a nonprofit corporation into a public institution. We find no error in the trial court's decision on this issue.

## II

Plaintiff next argues that the trial court erred in

finding that defendants are entitled to qualified immunity pursuant to MCL 331.531; MSA 14.57(21).[1] That statute grants a qualified immunity to persons engaged in the medical staff peer review process. The immunity does not apply to a person, organization or entity that acts with malice.

The trial court found that the allegations of malice contained in plaintiff's complaint were "mere conclusions" and that plaintiff had not alleged facts showing actual malice on the part of defendants. The allegations made by plaintiff are as follows:

"46. That the defendants jointly and severally with

[1] "A person, organization, or entity may provide information or data relating to the physical or psychological condition of any person, or the necessity, appropriateness, of the quality of health care rendered to any person, to any review entity. Review entity means a duly appointed peer review committee of the state, of a state or county association of health care professionals, of an officially constituted health care facility, or of a health care association; a professional standards review organization qualified under federal or state law; a foundation or organization acting pursuant to the approval of a state or county association of health care professionals; or a state department or agency whose jurisdiction encompasses such information. Liability of any kind shall not arise or be enforced against any person, organization, or entity by reason of having provided such information or data; by reason of any act or communication within its scope as a review entity; or by reason of having released or published the proceedings, reports, findings, or conclusions of the review entity subject to the limitations of sections 2 and 3. The immunity in this section shall not apply to a person, organization, or entity that acts with malice."

MCL 331.532; MSA 14.57(22) provides:

"The release or publication of the proceedings, reports, findings, and conclusions of a review entity shall be for 1 or more of the following purposes;

"(a) To advance health care research or health care education.

"(b) To maintain the standards of the health care professions.

"(c) To protect the financial integrity of any governmentally funded program.

"(d) To provide evidence relating to the ethics or discipline of a health care provider, entity, or practitioner."

malice and intending to injure and destroy plaintiff's medical practice and ruin his good name and reputation, caused to be printed and distributed amongst plaintiff's colleagues, peers, and other members of the medical community at Community Hospital, a statement that a motion had been passed by the Community Hospital Executive Board 'to terminate pulmonary function privileges * * * because of incompetency * * *.'

*    *    *

"49. That the statement that was made, published and disseminated was known or should have been known by defendants to be false and was made by defendants jointly and severally, maliciously and wickedly."

Review of these allegations and the record makes it apparent that plaintiff has not submitted clear and convincing proof necessary to establish a genuine issue of material fact concerning the existence of actual malice. See *Lins v Evening News Ass'n*, 129 Mich App 419, 433-434; 342 NW2d 573 (1983).

In fact, the record reveals that the physicians responsible for reviewing plaintiff's case in the intrahospital proceedings fairmindedly sought to assess plaintiff's competency. For example, when the doctors at plaintiff's initial hearing felt that they did not have sufficient expertise to evaluate plaintiff's work, they recruited outside pulmonary experts to analyze the tests. It was also established that the meeting minutes containing the statement regarding termination of plaintiff's privilege was distributed according to normal hospital procedure and did not contain plaintiff's name. From these facts, we ascertain no indication of actual malice and affirm the trial court's finding.

## III

Our resolution of this issue obviates the need to address plaintiff's constitutional claims. As a pri-

vate institution, the actions of defendant hospital are not subject to analysis under the due process clause of the Fourteenth Amendment to the United States Constitution. *Rendell-Baker v Kohn,* 457 US 830, 837; 102 S Ct 764; 73 L Ed 2d 418, 425 (1982). In any case, the trial court applied a "fundamental fairness" standard, *i.e.,* a due process analysis, to determine whether plaintiff had been awarded a fair hearing of his claims. There is ample record support for the trial court's findings. Accordingly, we also reject plaintiff's contention that the trial court's findings of fact are clearly erroneous.

## IV

Similarly, we decline to review plaintiff's claim that he was erroneously held to a higher expert standard of care and that his competence should have been tested against that of a general practitioner in the community. Since this is not a negligence action for malpractice, this standard is of dubious relevance here. The appropriate review standard is for the hospital, not this Court, to determine.

## V

Plaintiff next asserts that the trial court erred in denying his request for further discovery. A grant of summary judgment is premature if made before discovery on the disputed issue is complete. *Goldman v Loubella Extendables,* 91 Mich App 212; 283 NW2d 695, *lv den* 407 Mich 901 (1979). In *Pauley v Hall,* 124 Mich App 255, 263; 335 NW2d 197 (1983), the Court stated:

"However, there must be a disputed issue before the

court. If the party opposing a motion for summary judgment cannot present competent evidence of a disputed fact because his or her discovery is incomplete, the party must at least assert that such a dispute does indeed exist and support the allegation by some independent evidence, even if hearsay. An unsupported allegation which amounts solely to conjecture does not entitle a party to an extension of time for discovery, since under such circumstances discovery is nothing more than a fishing expedition to discover if any disputed material fact exists between the parties."

After a review of the record we conclude that further discovery in the instant case would not reveal any useful evidence and would amount to nothing more than a fishing expedition.

Plaintiff has deposed Dr. Chihsing Chen, who served as his preceptor, as well as several other doctors who were involved in the decision to terminate his privileges. Hospital administrators James T. Leigh and Walter Bell have also been deposed. No testimony given in those depositions supports plaintiff's claim of malice. Further, as the trial court noted, plaintiff did not request additional discovery during the three or four months lapse between the time the parties submitted briefs on the summary judgment motion and the trial court's decision. See GCR 1963, 116.6, 117.3. Under the circumstances, we conclude that the trial court did not err in denying plaintiff's request for further discovery.

## VI

We next consider plaintiff's claim that the trial court erred in considering the defendants' affidavits in support of their summary judgment motion. Plaintiff correctly points out that affidavits used in a summary judgment proceeding must be made on

personal knowledge of the affiant and must set forth the facts which would be admissible as evidence to establish or deny the grounds stated in the pleading or motion. *Remes v Duby (After Remand),* 87 Mich App 534; 274 NW2d 64 (1978). In the instant case the defendant doctors submitted virtually identical affidavits stating that each of them believed that Dr. Chen's evaluation of plaintiff's interpretations of the pulmonary function tests was accurate and correct, that the conclusion reached by Dr. Chen regarding plaintiff's competence to interpret the tests was correct, and that each of the doctors acted in good faith and in the interest of the patients served by Community Hospital in terminating plaintiff's privileges to interpret the tests. Plaintiff attacks the affidavits as being invalid because he asserts that Dr. Chen's evaluations were not accurate and correct.

In our opinion, plaintiff's contention is without merit. Each of the doctors who filed the affidavits was involved in either the actual hearing of plaintiff's grievances or the appeals which stem from the hearing committee's determinations. Each doctor had an opportunity to review the evidence and come to his own conclusion. Plaintiff's attack on the affidavits cannot be supported merely by disagreement with their contents.

## VII

Plaintiff also contends that since 1977 he has had the privilege to interpret pulmonary function tests at another hospital under the direction of the same Dr. Chen who declared him incompetent to perform the tests in the instant case. This fact, if true, is not in the record and we may not consider it on appeal. Other claims raised by plaintiff are also without merit.

Affirmed.